IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

THOMAS C. SCHULTZ,

    Plaintiff,

v.                                      Civil Action No. 5:04CV47
                                                (STAMP)
AT&T WIRELESS SERVICES, INC.,
a foreign corporation,

    Defendant.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S SECOND MOTION**
**TO COMPEL ARBITRATION**

I.  Procedural History

On March 4, 2004, the plaintiff, Thomas C. Schultz ("Schultz"), filed a complaint in the Circuit Court of Ohio County, West Virginia against the defendant, AT&T Wireless Services, Inc. ("AT&T"), which stems from a contract dispute regarding cellular services. On April 12, 2004, the defendant removed the action to this Court pursuant to 28 U.S.C. § 1332, based on the diversity of citizenship of the parties. On April 16, 2004, the plaintiff filed an amended complaint. On May 17, 2004, the defendant filed a motion to dismiss or, alternatively, to stay this action and to compel arbitration. The plaintiff responded to this motion and the defendant replied.

On September 7, 2004, the plaintiff filed a motion to file a second amended complaint. This Court granted the plaintiff's motion, directed the Clerk to file the second amended complaint,

and denied the defendant's motion to dismiss or to stay and compel arbitration without prejudice. On February 11, 2005, the defendant filed its second motion to compel arbitration, to which the plaintiff responded and the defendant replied. The plaintiff later filed a supplemental response.

The defendant's second motion to compel arbitration is now fully briefed and ripe for review. Upon consideration of the parties' memoranda and the applicable law, this Court finds that the defendant's second motion to compel arbitration should be granted.

## II. Facts

This action arises from a wireless telephone service contract that the plaintiff purchased from AT&T. In his complaint, the plaintiff contends that AT&T breached the contract by unlawfully withdrawing funds from his bank account and, after the plaintiff made an inquiry, destroying records pertaining to his wireless service account. He makes claims of fraud, invasion of privacy, and breach of the implied covenant of good faith and fair dealing. The plaintiff also seeks a declaratory judgment preventing AT&T from assessing a termination fee for the plaintiff's early termination of his wireless telephone service. In addition, he requests a class action certification on behalf of all others similarly situated in the State of West Virginia. The plaintiff also seeks compensatory and punitive damages.

At issue in this case is a clause that was included in the Terms and Conditions printed in the AT&T Wireless Welcome Guide, which the plaintiff received when he purchased a new wireless telephone from AT&T during a promotional sale. The clause states:

> a. Binding Arbitration. This provision is intended to be interpreted broadly to encompass all disputes or claims arising out of our relationship. Any dispute or claim, including those against our subsidiary, parent or affiliate companies, arising out of or relating to this Agreement, our Privacy Policy or the Service or any equipment used in connection with the Service (whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory) will be resolved by binding arbitration except that (1) you may take claims to small claims court if they qualify for hearing by such court, or (2) you or we may choose to pursue claims in court if the claims relate solely to the collection of any debts you owe us.

Def.'s Second Mot. Compel Arbitration, First Aff. of Gayle Tucker, Ex. 1, Welcome Guide at 27.

It is undisputed that the agreement containing this language is unsigned by either party. However, AT&T contends that the plaintiff accepted the Terms and Conditions listed in the Welcome Guide by activating and using AT&T service on that phone, and by accepting a 1000 Nights and Weekend Minutes contract renewal promotion. The Welcome Guide states that "[b]y using the device or service, accepting a benefit in exchange for committing to new Terms and Conditions or a new contract term, or by paying any amount billed to your account, you consent to the terms and conditions set forth in this guide." Id., Ex. 1, Welcome Guide at 2.

AT&T also avers that in December 2002, the plaintiff upgraded through AT&T's Customer Upgrade Program at a store in Pittsburgh, Pennsylvania. AT&T claims that, pursuant to the program guidelines as well as store policy, the sales representative read the following statement to the plaintiff:

> By accepting this equipment upgrade discount and using the new equipment, you agree to a new 12 month service contract and new Terms and Conditions of service contained in the Welcome Guide that accompanies your upgrade equipment, Mr./Mrs. Customer, do you accept this offer?

Id., Ex. 1, Welcome Guide at 2. The store representative attests that she clicked on the "Accept" button on her computer screen, indicating the plaintiff accepted the offer. Id.[1]

### III. Applicable Law

The Federal Arbitration Act ("FAA") applies to "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . ." 9 U.S.C. § 2. The FAA "embodies a federal policy favoring arbitration. Thus, 'as a

---

[1] The plaintiff disputes this fact in his second affidavit, asserting that no one in the store notified him of the new Terms and Conditions that took effect upon his upgrade. However, case law supports a presumption of notice if evidence establishes a standard business practice. See Marsh v. First USA Bank, N.A., 103 F. Supp. 2d 909, 919 (N.D. Tex. 2000); O'Quin v. Verizon Wireless, 256 F. Supp. 2d 512, 516-17 (M.D. La. 2003). This Court is satisfied that AT&T has established a standard business practice with respect to reading the terms of the agreement and requiring verbal acceptance.

4

matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Drews Distrib., Inc. v. Silicon Gaming, Inc., 245 F.3d 347, 349 (4th Cir. 2001)(quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)). On the other hand, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers of Am. v. Warrior & Golf Navigation Co., 363 U.S. 574, 582 (1960). There does exist, however, a "heavy presumption of arbitrability" and when there is a question as to the scope of an arbitration clause, "a court must decide the question in favor of arbitration." Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 812 (4th Cir. 1989). "A court should not deny a request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Drews, 245 F.3d at 349-50 (quoting Warrior & Gulf Navigation Co., 363 U.S. at 582-83). Thus, arbitration is strongly favored in this circuit and elsewhere.

## IV. Discussion

AT&T argues that the plaintiff must settle his dispute with AT&T through arbitration, pursuant to the terms and conditions of the contract. In response, the plaintiff asserts that the arbitration clause was unconscionable and unenforceable and is invalidated by West Virginia law, under which an arbitration

5

contract must be "bargained for" in order to be valid. The plaintiff claims that the adhesion contract he signed is presumptively invalid in West Virginia, and that an arbitration agreement contained in an adhesion contract which deprives a citizen the right to pursue a class action is unconscionable and unenforceable. In its reply, AT&T argues that the Federal Arbitration Act preempts the West Virginia "bargained for" doctrine and that this doctrine cannot be applied to avoid enforceability.

The plaintiff first asserts that the arbitration clause is invalid under West Virginia law because it was not "bargained for." The plaintiff cites Board of Education v. Harley Miller, Inc., 160 W. Va. 473 (1977), which states that invalidation is necessary when "there was no meaningful bargaining with regard to the arbitration provision." Id. at 487.

AT&T argues that the United States Court of Appeals for the Fourth Circuit has clearly stated that the FAA preempts "state rules of contract formation which single out arbitration clauses and unreasonably burden the ability to form arbitration agreements." Saturn Distrib. Corp. v. Williams, 905 F.2d 719, 723 (4th Cir. 1990). Thus, AT&T contends that the "bargained for" doctrine established in Harley Miller is preempted by the FAA.

In Perry v. Thomas, 482 U.S. 483 (1987), the Supreme Court of the United States held that

> state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning

the validity, revocability, and enforceability of
contracts generally. A state law principle that takes
its meaning precisely from the fact that a contract to
arbitrate is at issue does not comport with th[e]
requirement of [9 U.S.C.] § 2.

Id. at 492. Upon review, this Court must conclude that the "bargained for" doctrine established in Harley Miller was specifically tailored to arbitration disputes, and thus is preempted by the FAA. To support this finding, this Court notes the language used in the paragraph preceding the holding of the case:

If arbitration is ever to have a useful place in our
jurisprudence, it is essential that we address the
problem which we caricature as the contract between the
rabbits and foxes, in which the foxes impose the clause
that all disputes will be resolved by a panel of foxes,
or by a panel of wolves. In real life we can envisage
arbitration provisions being imposed upon consumers in
contract situations where consumers are totally ignorant
of the implications of what they are signing, and where
consumers bargain away many of the protections which have
been secured for them with such difficulty at common law.

Harley Miller, 160 W. Va. at 486. This discussion leaves little doubt that it was the intent of the Supreme Court of Appeals of West Virginia to specifically target arbitration agreements, rather than contracts generally. Accordingly, pursuant to Saturn Distrib. Corp., this Court finds that the "bargained for" doctrine is preempted by the FAA.

The plaintiff next argues that the arbitration provision is unconscionable under West Virginia law because it precludes all class action lawsuits as part of a contract of adhesion. In

7

support of this argument, the plaintiff cites State ex rel. Dunlap v. Berger, 211 W. Va. 549 (2002), cert denied, Friedman's Inc. v. West Virginia ex rel. Dunlap, 123 S. Ct. 695 (2002). The plaintiff argues that the language in Dunlap is not limited to arbitration provisions, but applies generally to contracts of adhesion. For this reason, the plaintiff argues that the Dunlap ruling is applicable and is not preempted by the FAA.

AT&T counters that the FAA preempts the holding in Dunlap as well. AT&T cites Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Coe, 313 F. Supp. 2d 603 (S.D. W. Va.), in support of the proposition that, while Dunlap addresses all contracts on its face, its holding places arbitration agreements on a different footing than other contracts.

First, this Court notes that the Fourth Circuit has not found that class action waivers render an arbitration clause unconscionable per se, and instead has considered the surrounding circumstances in each case. Specifically, the Fourth Circuit has examined whether such a prohibition on class actions has precluded the plaintiff from effectively asserting his claims or has extinguished a right provided by statute. See Adkins v. Labor Ready, Inc., 303 F.3d 496, 503 (4th Cir. 2002) (rejecting contention that arbitration agreement was unconscionable due to the expense of retaining counsel and the small amount of damages); Snowden v. Checkpoint Check Cashing, 290 F.3d 631, 638 (4th Cir.

2002) (rejecting argument that arbitration agreement was unenforceable due to inability to bring class action, given the fact that the Fair Labor Standards Act did not specifically note a nonwaivable right to a class action).

Neither of these circumstances is present in this case. First, the plaintiff is not precluded from vindicating his rights if this action proceeds in arbitration. While he contends that an arbitrator has no power to issue injunctive relief, he provides no legal support for this argument. This Court has found authority that supports the opposite conclusion. Under Rule 34 of the Commercial Arbitration Rules of the American Arbitration Association, an arbitrator has the power to "issue such orders as may be deemed necessary to safeguard the property which is the subject matter of the arbitration . . ." A number of courts have found that this Rule provides an arbitrator with the ability to grant injunctive relief. See, e.g., Southern Seas Navigation, Ltd. v. Petroleos Mexicanos, 606 F. Supp. 692, 694 (S.D.N.Y. 1985); State ex rel. Wells v. Matish, 215 W. Va. 686 (2004). Moreover, this Court notes that the arbitration clause at issue clearly states that "[a]n arbitrator may award any relief or damages (including injunctive or declaratory relief) that a court could award . . ." Def.'s Second Mot. Compel Arbitration, First Aff. of Gayle Tucker, Ex. 1, Welcome Guide at 27 (emphasis added). Further, the plaintiff has made no argument that arbitration is

cost prohibitive for him, and this Court can find no evidence of this in the record.

The plaintiff's only remaining argument is that his right to class action relief under West Virginia law is extinguished. The plaintiff relies on State ex rel. Dunlap v. Berger as the source of this right. In Dunlap, the Supreme Court of Appeals of West Virginia held:

> [E]xculpatory provisions in a contract of adhesion that if applied would prohibit or substantially limit a person from enforcing and vindicating rights and protections or from seeking and obtaining statutory or common-law relief and remedies that are afforded by or arise under state law that exists for the benefit and protection of the public are unconscionable; unless the court determines that exceptional circumstances exist that make the provisions conscionable.

211 W. Va. at 559. However, this Court notes that the plaintiff in Dunlap asserted "a small dollar/high volume (alleged) illegality that class action claims and remedies are effective at addressing" -- specifically, a claim worth $8.46. Id. at 562. In this case, the plaintiff's second amended complaint seeks damages for aggravation, annoyance and inconvenience, emotional distress, humiliation, anger, monetary losses, attorney's fees and expenses, and punitive damages. Second Am. Compl. ¶¶ 18, 19. Further, the plaintiff specifically avers that the amount in controversy exceeds the jurisdictional amount of this Court, which is $75,000.00. See Second Am. Compl. ¶ 35. Thus, the plaintiff's claim cannot be considered "small dollar" and the plaintiff can effectively and

cost-efficiently vindicate his rights through arbitration. For this reason, the facts of this case do not appear to implicate the holding in Dunlap.

Further, even if the holding in Dunlap was applicable in this case, this Court agrees with AT&T's argument that Dunlap is preempted by the FAA. Specifically, this Court finds the holding in Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Coe persuasive. Coe generally addressed the impact of Dunlap on the "juxtaposition of state and federal law" as to arbitration agreements.[2] The Coe court held that while the Dunlap ruling did not facially target arbitration clauses, its application has that effect:

> When parties agree to resolve their disputes through arbitration, they also agree to not resolve their disputes by going to court, or more specifically, by resorting to rules of court procedure. Applying a state rule of law that imposes heightened requirements on "agreements that waive rights under the Rules of Civil Procedure" would necessarily impose heightened requirements on "agreements to not submit claims to the Rules of Civil Procedure" -- and this would obstruct agreements to resolve claims in an arbitral forum instead of a court. Although such a rule would leave "arbitration" undisturbed as an abstract matter, the rule would have the effect of placing agreements to arbitrate (agreements to not resolve disputes through standard civil procedure) on a different footing than other contracts. "An arbitral forum need not replicate the judicial forum." Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 940 (4th Cir. 1999).

---

[2] This Court notes that the holding in Coe specifically did not address the availability of class action relief. See 313 F. Supp. 2d at 614.

Id. at 615. On those grounds, the court held that the ruling in Dunlap did not preclude the operation of the arbitration clause at issue in the case. Id. This Court agrees with this analysis, and finds that the holding in Dunlap is preempted by the FAA. Thus, the plaintiff's argument that the arbitration clause is unconscionable due to its foreclosure of class action relief also lacks merit.

Title 9, United States Code, Section 2 states that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Thus, this Court will conclude by considering whether the arbitration clause violated the principles of contract law in any way other than those previously discussed.

Under West Virginia law, the formation of a contract requires offer and acceptance, as well as consideration. Cook v. Hecks, Inc., 176 W. Va. 368, 373-74 (1986). "The concept of a unilateral contract, where one party makes a promissory offer and the other accepts by performing an act rather than by making a return promise, has . . . been recognized." Id. at 373. Moreover, courts have found arbitration provisions enforceable under similar circumstances. In ProCD, Inc. v. Zeidenburg, 86 F.3d 1447 (7th Cir. 1996), the court found that terms inside a box of software could bind consumers who use the software after being given an

12

opportunity to read and reject the terms and return the item. Later, in <u>Hill v. Gateway 2000</u>, 105 F.3d 1147 (7th Cir. 1997), the Seventh Circuit extended the holding in <u>Zeidenburg</u> to enforce an arbitration clause which was contained inside the box for a Gateway 2000 system. The <u>Hill</u> court found that "[a] vendor, as master of the offer, may invite acceptance by conduct, and may propose limitations on the kind of conduct that constitutes acceptance. A buyer may accept by performing the acts the vendor proposes to treat as acceptance." <u>Id.</u> at 1149. The court went on to explain that "[a] contract need not be read to be effective; people who accept take the risk that the unread terms may in retrospect prove unwelcome." <u>Id.</u> at 1148. This Court agrees with the <u>Zeidenburg</u> and <u>Hill</u> analyses. Thus, this Court is satisfied that by activating and/or continuing use of his phone, the plaintiff accepted the terms and conditions contained in AT&T's Welcome Guide.

Consideration is the final required element of a contract. <u>Cook</u>, 176 W. Va. at 373. "Consideration has been defined as 'some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by another.'" <u>Id.</u> (quoting 17 Am. Jur. 2d <u>Contracts</u> § 85). This Court is satisfied that the plaintiff in this case received consideration in the form of a promotional contract and a discounted phone. <u>See</u> Def.'s Second Mot. Compel Arbitration, First

13

Aff. of Gayle Tucker, Ex. 1 at 1-2; Second Aff. of Gayle Tucker, Ex. 2 at 1-2. Thus, the contract contained all of the requisite elements.

The plaintiff argues that the contract is invalid because it is an unconscionable adhesion contract. An adhesion contract is defined as a "standardized contract form offered . . . on essentially [a] 'take it or leave it' basis. . . . [leaving the] weaker party . . . no realistic choice as to its terms." State ex rel. Saylor v. Wilkes, 2005 W. Va. LEXIS 32, at *21-22 (quoting Black's Law Dictionary 40 (6th ed. West 1990)). West Virginia law provides the following standard regarding unconscionability:

> [W]hen the gross inadequacy in bargaining power combines with terms unreasonably favorable to the stronger party, the contract provisions will be found unconscionable which in turn renders the contract unenforceable. A determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and []the existence of unfair terms in the contract.

Id. at *22 (internal quotations and citations omitted).

Upon review, this Court finds that the agreement at issue was an adhesion contract, as it was a standardized contract that AT&T offered on a "take it or leave it" basis. However, the contract as a whole did not state unreasonable terms or unfairly take advantage of the plaintiff, and it did not "offend[] the developed policy of the law in the area under consideration," given judicial precedent upholding such agreements. See Hill v. Ryerson & Son, Inc., 165 W.

14

Va. 22, 36 (1980). Moreover, the plaintiff was a sophisticated, educated consumer in a reasonable bargaining position, given the meaningful alternatives that he held in obtaining phone service.

V. Conclusion

This Court is satisfied that the arbitration clause at issue in this case is legally enforceable and that the claims asserted by the plaintiff are within its broad scope. Accordingly, for the reasons stated above, AT&T's motion to compel arbitration is hereby GRANTED. This civil action is hereby STAYED pending the outcome of the arbitration. The parties are DIRECTED to provide this Court with a status report regarding the arbitration proceedings on or before **October 31, 2005**.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:  May 27, 2005

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE